**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
GARY DELA RABA, JAMES CARVER,
KEVIN TOBIN, WAYNE HARTMANN,
JOSEPH FAILLA and JAMES McDERMOTT,

                       Plaintiffs,                  **MEMORANDUM**
                                                                   **AND ORDER**
        - against -

                                                                   CV 06-1109 (DRH) (AKT)

THOMAS R. SUOZZI and the COUNTY OF
NASSAU,

                       Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    BACKGROUND**

      The underlying facts of this First Amendment retaliation action are fully contained in my November 17, 2006 Report and Recommendation [DE 75], familiarity with which is assumed for purposes of this motion. On November 9, 2006, Plaintiffs moved by letter motion for an *in camera* review by the Court of 16 documents identified in Defendants' privilege log to determine whether these documents were properly withheld from Defendants' document production [DE 61]. Counsel for the Defendants filed their response on November 15, 2006 [DE 69] and supplemental briefing on this issue was subsequently filed by both parties [DE 82, 87, 107].

      After carefully reviewing the 16 documents at issue, I find that although many of the documents fall within the traditional litigation privileges, not all of the information contained in theses documents is privileged. In light of the necessity for a ruling on this issue before the next scheduled deposition on January 12, 2007, I am setting forth below my individual ruling on each

of these documents. Those documents which are entirely comprised of privileged information will remain confidential and shall not be disclosed to Plaintiffs.

**II.     STANDARD OF REVIEW**

The Federal Rules mandate the production of a privilege log when a party withholds information that is otherwise discoverable. Fed. R. Civ. P. 26(b)(5). The log must assert the privilege "expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." *Id.* Fed. R. Civ. P. 26(b)(3) embodies the federal work product doctrine which provides qualified protection to "documents and tangible things ... prepared in anticipation of litigation or for trial" from discovery. *United States v. New York Metropolitan Transportation Authority*, No. 04-CV-4237, 2006 WL 3833120, at *1 (E.D.N.Y. 2006). Documents prepared in anticipation of litigation are those that, in light of the nature of the document and the factual situation in the particular case ... can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Aldman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. *United States v. Constr. Prod. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The rationale underlying the privilege is to encourage attorneys and their clients to communicate fully and frankly to promote "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). A party invoking the attorney-client privilege must show

"(1) a communication between a client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Constr. Prod. Research, Inc.*, 73 F.3d at 473. The burden of establishing the applicability of the attorney-client privilege and the attorney work product doctrine lies with the party invoking it. *In re County of Erie*, No. 06-2459, 2007 WL 12024, at *3 (2d Cir. Jan. 3, 2007); *In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir. 2000); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997); *Constr. Prod. Research, Inc.*, 73 F.3d at 473.

### III. DISCUSSION

On January 3, 2007, in the midst of my *in camera* review of the 16 logged documents at issue here, the Second Circuit issued its opinion, *In re County of Erie*, No. 06-2459, 2007 WL 12024, at *5 n.8 (2d Cir. Jan. 3, 2007), which contains relevant guidance on some of the privilege issues raised in this motion. In *Erie,* the Second Circuit addressed for the first time whether "the attorney-client privilege protects communications that pass between a government lawyer having no policymaking authority and a public official, where those communications assess the legality of a policy and propose alternative policies in that light." *Id.* at *2. As the court observed

> [t]he issue of first impression here concerns policy advice rendered by a government lawyer and the distinction between (on the one hand) attorney-client privileged recommendations designed to achieve compliance with the law or reduce legal risk, and (on the other) recommendations made for other reasons, which advice may not be privileged.

*In re County of Erie*, 2007 WL 12024, at *2.

The factual circumstances giving rise to the privilege issues asserted in *Erie* are distinguishable from those in the instant case. In *Erie*, Plaintiffs commenced a suit under 42 U.S.C. § 1983 alleging that, pursuant to a written policy of the Erie County Sheriff's Office which was promulgated by County officials, every detainee who entered the County's holding center or correctional facility was "subject to an invasive strip search, without regard to individualized suspicion or the offense alleged," in violation of the Fourth Amendment. *Id.* at *1. During discovery, the County withheld certain documents pursuant to an assertion of attorney-client privilege and produced a privilege log. *Id.* When Plaintiffs moved to compel the logged documents, most of which were e-mails, the magistrate judge reviewed the documents *in camera*, after which he ordered production of ten e-mails, finding that "no legal advice is rendered apart from policy recommendations." *Id.* When the district judge overruled the County's objections, the County filed a petition for a writ of mandamus to the Second Circuit. *Id.*

Ultimately, the Second Circuit determined in *Erie* that the "predominant purpose" rule was the correct one to analyze and determine the scope of the attorney-client privilege in this context. *Id.* at *5 n.7 (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)); *In re Grand Jury Subpoena*, 204 F.3d 516, 520 n.1 (4th Cir. 2000). The Court went on to note that the

> predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer. . . .
>
> The predominant purpose of a particular document — legal advice, or not — may also be informed by the overall needs and objections that animate the client's request for advice.

*In re County of Erie*, 2007 WL 12024, at *4, *6.

The documents at issue in *Erie* passed between the Assistant County Attorney and various officials in the Sheriff's Office. *Id.* at *7. The Second Circuit disagreed with the District Court's reasoning that because the e-mails went beyond rendering legal analysis, they were not privileged. Notably, the court stated "[i]t is to be hoped that legal considerations will play a role in governmental policymaking." *Id.* In observing that each of the ten e-mails was sent for the predominant purpose of soliciting or rendering legal advice, the court granted the writ of mandamus, concluding that the e-mails

> convey to the public officials responsible for formulating, implementing and monitoring Erie County's corrections policies, a lawyer's assessment of Fourth Amendment requirements, and provide guidance in crafting and implementing alternative policies for compliance. This advice – particularly when viewed in the context in which it was solicited and rendered – does not constitute "general policy or practical advice" unprotected by the privilege."

*Id.* at *7 (citing *In re Lindsey*, 148 F.3d at 1120).

Although the documents at issue in the instant case do not revolve around policy-making advice, the Second Circuit's opinion in *Erie* does provide a looking glass to approach the privilege issues raised herein. One specific observation of the Court in *Erie* is particularly apt here:

> Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. *See generally* 1 Paul R. Rice, Attorney Client Privilege in the United States § 7:9 (2d ed. 1999).

*Id.* at *5. The Court further observed that "legal advice" is broader, and "not demarcated by a bright line." *Id.* "And the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice." *Id.* at

5

*5 (citing *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357 (D. Mass. 1950)). The communications that are at issue here are not directed to policymaking issues, but rather can more readily be said to be directed to "the interpretation of legal principles to guide future conduct or assess past conduct." Therefore, I find the overall guidance provided in *Erie* to be applicable here.

"The attorney-client privilege accommodates competing values; the competition is sharpened when the privilege is asserted by a government." *In re County of Erie*, 2007 WL 12024, at *4. The "traditional rationale for the privilege applies with special force in the government context." *Id.* at *4 (citing *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005)). The Second Circuit notes that applying the attorney-client privilege in the government context accommodates "competing values" because when upheld it "furthers a culture in which consultation with government lawyers is accepted as a normal, desirable and even indispensable part of conducting legal business. Abrogating the privilege undermines that culture and thereby impairs the public interest." *Id.* (citing *In re Grand Jury Investigation*, 399 F.3d at 534).

It is appropriate to use the "predominant purpose" standard in reviewing Defendants' privilege log. *United States v. International Business Machines Corp.*, 66 F.R.D. 206, 212 (S.D.N.Y. 1974). The "predominant purpose" standard recognizes that in the process of giving legal advice, an attorney may incorporate "'relevant nonlegal considerations' without losing the privilege of nondisclosure." *International Business Machines Corp.*, 66 F.R.D. at 212 (citing *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357 (D. Mass. 1950)). "This does not mean that the attorney-client privilege attaches to incidental legal advice given by an attorney

6

acting outside the scope of his role as an attorney." *Id.* at 212. For example, where an attorney acts an advisor, "the attorney must give predominantly legal advice to retain his client's privilege of non-disclosure, not solely, or even largely, business advice." *Id.* (citing *Zenith Radio Corp. v. Radio Corp. of America*, 121 F. Supp. 792, 794 (D. Del. 1954)). The subtleties of the "predominant purpose" standard are significant in the context of this matter where several County officials have dual roles, as attorneys as well as government advisors, an important factor of which the Court has been vigilant in assessing whether the attorney-client privilege applies.

Having reviewed the documents contained in Defendants' privilege log through the prism of the *Erie* decision, I find that the majority of these documents are communications generated for the purpose of obtaining or providing legal advice, and particularly the interpretation and application of legal principles to guide future conduct or to assess past conduct. As such, the majority of the documents at issue are privileged and are not required to be produced.

The Second Circuit took note in *Erie* that redaction is available "for documents which contain legal advice that is incidental to the non-legal advice that is the predominant purpose of the communication." *Erie*, 2007 WL 12024, at *5 n. 8.[1] Applying this principle, I am directing that several of the documents at issue be produced in redacted form. Those redactions have been implemented by the Court and are reflected in the documents attached to this Order. Each of the

---

[1] For those hybrid documents containing legal advice which is incidental to the nonlegal advice that is the predominant purpose of the communication, redaction is appropriate and an acceptable and available method in this Circuit. *In re County of Erie*, 2007 WL 12024, at *5 n.8; *see also United States v. Weisman*, No. 94-CR- 760, 1995 WL 244522, at *4 (S.D.N.Y. Apr. 26, 1995); *Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y. 1982) (stating that "in those instances where both privileged and non-privileged material exist, the privileged material has been deleted").

items listed in the privilege log is addressed individually below.[2]

Based on the parties' submission and the reasons set forth previously in this decision, it is hereby

ORDERED, that Document No. 1 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 2 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 3 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 4 contains both privileged and non-privileged information. Therefore, this document has been redacted and is hereby produced as appended to this Order; and it is further

ORDERED, that Document No. 5 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 6 contains both privileged and non-privileged information. Therefore, this document has been redacted and is hereby produced as appended to this Order; and it is further

ORDERED, that Document No. 7 contains both privileged and non-privileged information. Therefore, this document has been redacted and is hereby produced as appended to this Order; and it is further

ORDERED, that Document No. 8 contains both privileged and non-privileged information. Therefore, this document has been redacted and is hereby produced as appended to this Order; and it is further

ORDERED, that Document No. 9 is privileged and need not be disclosed; and it is further

---

[2] All references made herein to document numbers correspond to the numbered identification for documents in the Defendants' privilege log.

ORDERED, that Document No. 10 contains both privileged and non-privileged information. Therefore, this document has been redacted and is hereby produced as appended to this Order; and it is further

ORDERED, that Document No. 11 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 12 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 13 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 14 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 15 is privileged and need not be disclosed; and it is further

ORDERED, that Document No. 16 is privileged and need not be disclosed.

**SO ORDERED.**

Dated: Central Islip, New York
January 11, 2007

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge